IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LESLIE PROIETTI, ADMINISTRATOR OF THE ESTATE OF DAVID VARGAS,<br>    Plaintiff | )<br>)<br>)<br>) |
| v. | ) No.<br>) |
| STEVEN A. HOKENESS and UNITED STATES OF AMERICA,<br>    Defendant | )<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Now comes the Plaintiff, Leslie Proietti, Administrator of the Estate of David Vargas (hereinafter "Proietti") and sets forth the following allegations:

## PARTIES

1. The Plaintiff, Proietti, is an individual duly appointed Administrator of the Estate of David Vargas by the Probate Court of the Town of Cumberland, Providence County, Rhode Island on June 14, 2012. Proietti has a principal place of residence in Cumberland, Rhode Island.

2. That the defendant, United States of America (hereinafter "USA") is the Administrator for Northwest Community Health Care d/b/a WellOne Primary Medical and Dental Care and is responsible for the actions of its employees and agents, including Steven A. Hokeness, M.D.

3. Northwest Community Health Care d/b/a WellOne Primary Medical and Dental Care (hereinafter "Northwest") is a federally funded Corporation duly organized under the Laws of the State of Rhode Island, with a principal place of business at 36 Bridgeway, Pascoag, Rhode Island.

4. Steven A. Hokeness (hereinafter "Hokeness") is a medical doctor licensed to practice medicine in the State of Rhode Island, with a principal place of business at 36 Bridgeway, Pascoag, Rhode Island.

## FACTS COMMON TO ALL COUNTS

5. David Vargas (hereinafter "Vargas"), a 58 year old male, was seen by his primary care physician, Dr. Hokeness (hereinafter "Hokeness") on October 8, 2009, in a follow-up appointment to discuss the results of a CTscan of the urinary system that was performed to evaluate back pain a month prior.

6. On October 8, 2009, Hokeness noted a mass in the right lobe of the thyroid gland of Vargas upon physical examination.

7. Based on the mass on Vargas' neck, Hokeness recommended a thyroid ultrasound which Vargas underwent on October 28, 2009, at Rhode Island Hospital which revealed, per the radiologist's report, three (3) nodules in the thyroid: an echogenic solid nodule in the mid-right lobe of the thyroid (measuring 2.4 x. 2.4 x 2.2 cm); a hetrogeneous solid nodule in the medial aspect of the left thyroid (measuring 1.8 x 1.6 x 1.2 cm); a third nodule - heterogeneous and solid - in the lower pole of the left lobe of the thyroid (measuring 3.0 x 2.8 x 2.7 cm).

8. The radiologist's diagnostic impression and recommendation was, "Diffusely enlarged hetergeneous thyroid gland with three discrete solid thyroid nodules." The radiologist recommended a fine needle aspiration/biopsy for histologic evaluation.

9. Despite Vargas' numerous follow-up visits with Hokeness on 10/13/09, 10/26/09, 11/24/09, 1/7/10, 2/16/10 and 6/11/10, there was no mention of the thyroid mass in physical examinations performed by Hokeness or other colleagues in his office nor mention of the results of the thyroid ultrasound. There was also no mention of a fine needle aspirate biopsy being recommended by the radiologist who performed the ultrasound.

10. Despite the recommendation of a needle biopsy by the radiologist who performed the thyroid ultrasound, Dr. Hokeness failed to order same.

11. In November, 2010, Vargas switched primary care physicians and began seeing another doctor, Dr. Osorio, who, on April 20, 2011, noted a mass in Vargas' thyroid and sent Vargas for a CT scan of his neck May 17, 2011.

12. The results of the CT scan showed a markedly enlarge right lower thyroid mass compressing the trachea and esophagus.

13. Vargas was then referred to Dr. Altenhein for consideration of thyroid surgery as a needle biopsy of the thyroid at this point was not indicated as Vargas was now having symptoms of choking compression of his airway by the thyroid tumor/growth and would need removal of the thyroid no matter what the growth was.

14. On July 13, 2011, a total thyroidectomy was performed on Vargas which showed a tumor in the right thyroid lobe to be a variant of papillary thyroid carcinoma further classified by the pathologist as "poorly differentiated" as documented in the pathology report of July 20, 2011.

15. Additional testing, a chest CT scan, showed small nodules in Vargas' lungs which were too small to biopsy so it was decided that Vargas would received radioactive iodine orally as well as postoperative external beam radiation to the neck/thyroid area as a preventative treatment against the high risk of recurrent cancer give the large size of the tumor at the time of surgery.

16. A follow-up chest scan was one on November 3, 2011, which now showed an increase in the size of the multiple pulmonary nodules and on November 17, 2011, a percutaneous needle biopsy was done of the left lower lobe lung nodule, which revealed it to be thyroid cancer that had spread to the lung.

17. Another follow-up CT scan of the thyroid was done in January, 2012, which showed continued increasing lung nodules. Vargas received a second course of radioactive iodine therapy and was now becoming increasingly short of breath.

18. Despite the treatment, another thyroid (iodine) scan was done, revealing more increase in the lung nodules and also now involvement of the bones in Vargas' right upper cheekbone, left pelvis and in the soft tissue area on his neck.

19. On March 14, 2012, Vargas sought a second opinion for his cancer treatment with Dr. Nadeem, who recommended palliative chemotherapy with taxol as well as supportive care and eventual transition to hospice care.

20. Vargas' condition continued to deteriorate despite continued treatment and therapy modalities and, on March 26, 2012, Vargas died due to the thyroid cancer.

21. On or about June 8, 2012, the Plaintiff was appointed as the Administratix of the Estate of David Vargas.

22. On or about July 24, 2014, notice was sent under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2401(b), 2671, notifying the United States of America of the Plaintiff's Administrative claim, which was received by the United States Government on August 22, 2014. The Government has not responded to Plaintiff's Administrative Claim.

## COUNT ONE
### (STEVEN A. HOKENESS)

23. Plaintiff hereby incorporates by reference paragraphs one (1) through sixteen (16) of this Complaint as if fully set forth herein.

24. The care and services provided by Defendant, Hokeness, constitutes medical negligence, error, and/or mistake and constitutes a departure from the accepted standard of care of the average qualified physician.

25. The Defendant, Hokeness, negligently failed to provide a reasonable degree of care such as is ordinarily possessed by other providing medical care and treatment.

26. The Defendant, Hokeness, was negligent in his failure to properly and timely diagnose Vargas' thyroid cancer while in his care from October 5, 2009 through March 26, 212, when Vargas died.

3

27. That as a direct result and proximate cause of Defendant, Hokeness', medical negligence, error, and/or mistake, Vargas was physically injured, experienced conscious pain and suffering and ultimately death.

**WHEREFORE,** Plaintiff, demands judgment against the Defendant, United States of America and Steven A. Hokeness, M.D., in an amount deemed sufficient by this Honorable Court to compensate for the wrongful death of David Vargas, pursuant to Rhode Island General laws 10-7-1 et seq; the decedent's pain and suffering; and any other relief this Court deems meet and just.

## COUNT TWO
## (UNITED STATE OF AMERICA)

28. Plaintiff hereby incorporates by reference paragraphs one (1) through twenty-seven (27) of this Complaint as if fully set forth herein.

29. That "USA", its agents, servants and/or employees at all times pertinent hereto were physicians duly licensed to practice medicine in the State of Rhode Island.

30. That at all times pertinent hereto, "USA", its agents, servants, and/or employees, provided medical services to the decedent at "Northwest" in Providence, Rhode Island.

31. That at all times pertinent hereto the decedent, David Vargas, was in a patient-physician relationship with "USA", its agents, servants, and/or employees at "Northwest".

32. That the care and treatment provided by "USA", its agents, servants, and/or employees, constitutes medical negligence, error and/or mistake in his negligence in the failure to properly diagnose and treated the decedent, which negligence deviated from the standard of care.

33. That "USA", its agents, servants, and/or employees, failed to follow up treatment of a mass on the decedent's neck measuring three (3) nodules in the thyroid: an echogenic solid nodule in the mid-right lobe of the thyroid (measuring 2.4 x. 2.4 x 2.2 cm); a hetrogeneous solid nodule in the medial aspect of the left thyroid (measuring 1.8 x 1.6 x 1.2 cm); a third nodule - heterogeneous and solid - in the lower pole of the left lobe of the thyroid (measuring 3.0 x 2.8 x 2.7 cm), based upon a thyroid ultrasound which decedent underwent on October 28, 2009.

34. That "USA", its agents, servants, and/or employees, failed to follow up treatment, despite the radiologist's recommendation that the decedent undergo a fine needle aspiration/biopsy for histologic evaluation, which negligence deviates from the standard of care.

35. That "USA", its agents, servants, and/or employees, failed to properly perform the fine needle aspiration/biopsy for histologic evaluation, resulting in a markedly enlarged right lower thyroid mass compressing the trachea and esophagus, requiring a total thyroidectomy which revealed a tumor in the right thyroid lobe to be a variant of papillary thyroid carcinoma further classified diagnosed as leaking, resulting in severe peritonitis.

36. That as a result of "USA", its agents, servants, and/or employees, negligence, the decedent was having symptoms of choking compression of his airway by the thyroid tumor/growth and the decedent would need removal of the thyroid no matter what the growth was.

37. That On July 13, 2011, a total thyroidectomy was performed on the decedent which showed a tumor in the right thyroid lobe to be a variant of papillary thyroid carcinoma further classified by the pathologist as "poorly differentiated" as documented in the pathology report of July 20, 2011.

38. That there was a deviation in the standard of care with respect to the failure of Dr. Hokeness to "work the decedent up" and his failure to obtain a needle biopsy of the thyroid as initially recommended by the radiologist.

39. That the dely from October 28, 2009 to March 26, 2012, his date of death, made a difference with respect to the decedent's treatment and the likelihood of survival if the cancer had been diagnosed in 2009.

40. That Papillary Thyroid Cancer is a slow-growing tumor and the delay in diagnosis by several years precluded the possibility of performing surgery on the thyroid cancer when it was still contained in the gland and therefore at a curable stage, thus preventing the decedent's demise from cancer.

41. That "USA", its agents, servants, and/or employees, failed to provide a reasonable degree of care such as is ordinarily possessed by other similarly trained and qualified physicians providing medical care and treatment.

42. That as a direct result and proximate cause of "USA's, its agents, servants, and/or employees" negligent acts and/or omissions, the decedent, David Vargas, was caused to suffer severe and permanent injuries to both his body and mind. As a further direct and proximate result of "USA's, its agents, servants, and/or employees" actions, the decedent was caused to suffer great physical pain and mental anguish, medical expenses, care, and attendance, and ultimately died on March 26, 2012. That the plaintiff was further caused to suffer funeral and burial expenses.

**WHEREFORE,** Plaintiff, demands judgment against the Defendant, United State of America in an amount deemed sufficient by this Honorable Court to compensate for the wrongful death of David Vargas, pursuant to Rhode Island General laws 10-7-1 et seq; the decedent's pain and suffering; and any other relief this Court deems meet and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL COUNTS IN THIS MATTER**

Leslie Proietti, Administrator
of the Estate of David Vargas
By her Attorney,
BRIAN CUNHA & ASSOCIATES, P.C.

Brian R. Cunha, Esquire (#4074)
311 Pine Street
Fall River, MA 02720
(508) 675-9500
Brian@briancunha.com

DATED: March 24, 2015